Eastern District of Kentucky
FILED

FEB 15 2007

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-30-JMH

ROBERT WAYNE FROST                      PLAINTIFF

VS:        **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, WARDEN, ET AL.            DEFENDANTS

\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\*

Robert Wayne Frost, who is currently confined in the Federal Correctional Institution-Beckley in Beaver, West Virginia ("FCI-Beckley"), has filed a *pro se* civil rights complaint under 28 U.S.C. §1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), together with an application to proceed *in forma pauperis*. The motion will be granted by separate Order.

This matter is before the Court for initial screening.[1] 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

CLAIMS

The plaintiff claims that while he was incarcerated at another United States Bureau of Prisons' ("BOP") facility, the FCI-Lexington in the Eastern District of Kentucky, certain BOP

---

[1] *Pro se* pleadings are held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* pleading must be taken as true and construed in favor of the *pro se* litigant. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, under 28 U.S.C. §1915(e)(2), the district court can dismiss a case at any time if it determines the action is frivolous or malicious or fails to state a claim upon which relief can be granted.

employees conducted a prison disciplinary proceeding against him in a manner that was grossly negligent and/or was purposefully not in conformity with his rights under relevant federal regulations, BOP policy, and the United States Constitution's due process clause.

## DEFENDANTS

As defendants, the plaintiff has named (1) the United States BOP; FCI-Lexington's (2) Warden Stephen M. Dewalt, (3) Associate Warden J. Meko, (4) Medical Director Dr. M. Grouse, (5) Captain David Nestor and (6) Commander Fred Lief, both of the U.S. Public Health Services, in their official capacities; and (7) Discipline Hearing Officer C.W. Tyndall, (8) Lt. V. Craddock, and (9) Counselor T. Hamby, in their individual and official capacities.

## RELIEF REQUESTED

The plaintiff seeks damages and injunctive relief, specifically, reversal of the disciplinary conviction, the recovery of Good Conduct Time ("GCT") which he lost upon the convictions, and expungement of the charges from his records.

## ALLEGATIONS OF THE PETITION

The following is a summary of the plaintiff's allegations, as contained in his complaint, accompanying memorandum of law, and attached exhibits.

Frost begins on June 22, 2005, when a staff member conducted a "shake down" of Plaintiff's locker and found "136 30-mg Sudodrin tablets, consisting of 68 unopened 2-pill packs and 219 AAA batteries, consisting of 54 unopened 4-battery packs and 3 individual batteries." An Incident Report was written, charging the plaintiff, who worked in the institutional pharmacy, with two serious

2

offenses, *i.e.*, possession of narcotics, a BOP Code 113 offense, and stealing, a Code 219 offense.[2] Later that day the plaintiff was given a copy of the incident report, which he attaches as Exhibit [hereinafter "Ex."] A, and he was taken to administrative detention in the prison's Special Housing Unit ("SHU"), where he stayed until he was transferred from Lexington to his current location at FCI-Beckley on October 11, 2005.

The plaintiff states that the disciplinary proceedings began correctly, as above-described, but later proceedings leading to his conviction were improper. As the first impropriety, he claims that 28 C.F.R. §541.14(a) requires that the incident report be forwarded to the appropriate Lieutenant; and in subpart (b), an investigation is to be conducted, with the investigating officer giving the inmate a copy of the incident report at the beginning of the investigation. The regulation also contains a list of other duties of the investigator. *Id.*

According to the instant plaintiff, however, no investigator ever came to see him, read him his rights, read the incident report to him, or did any of the duties required under the regulation. There is no evidence of an investigation being conducted in this case and there is no written record of an investigation, as is set out in the regulation. *Id.* It is the plaintiff's position that had an appropriate investigation taken place, his being authorized to have the drugs and his purchase of the batteries would have been discovered and the matter may not have escalated to a DHO hearing and the severe penalties which were imposed by the DHO.

---

[2] The various levels of Bureau of Prisons ("BOP") offenses are listed in 28 C.F.R. §541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos. 100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the third level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

3

Plaintiff states that under 28 C.F.R. §541.15, upon completion of the investigation, a prisoner is entitled to an initial hearing before staff members from the prisoner's housing unit, usually referred to as the Unit Disciplinary Committee ("UDC"). His hearing, however, did not conform to the regulation's requirements for a UDC hearing. Five days after the incident report, on June 27th, two staff members, Defendant Hamby and a person named Armstrong, who is not named as a defendant, merely paid him a short visit in the SHU.

The instant plaintiff complains that his committee of two did not obey the regulation in that they did not come within the required 3-day period after the incident; visited for only 5 minutes; did not give him a chance to make a statement or present documentary evidence (receipts for the batteries, to show that they were not stolen); and "rebuffed" his attempt to explain his possession of the items charged. Frost states that he does not remember if he was asked about desiring any witnesses, as he should have been. Finally, the plaintiff claims, his UDC was not impartial, Hamby admitting to him that "he assumed Plaintiff to be guilty as charged."

The UDC members finished their duties by signing their part of the incident report, recommending a disciplinary transfer and the loss of GCT, and referring the matter to a Disciplinary Hearing Officer ("DHO") for resolution because of the severity of the charges. Thereafter, the plaintiff complains, nothing happened. He had absolutely no preparation for the upcoming DHO hearing. Frost states that he had requested that Defendant Lief appear with him at the hearing as his staff representative, but Lief did not meet with him prior to the hearing.

In the time period between the deficient UDC hearing and the DHO hearing to decide the matter, the plaintiff also claims to have twice written requests to Defendant Nestor to come see him,

4

but Nestor did not appear. Purportedly, it was Plaintiff's plan for Nestor to explain that he had purchased the drugs outside the normal channels with a credit card and had then authorized the plaintiff to have "direct and unfettered" access to the drugs for himself and others. Also as to this period of time, Frost writes, "At no time prior to the DHO Hearing did the Warden deliver a written notice of the charges to Plaintiff."

The DHO hearing was had on July 5, 2005, with Defendant Tyndall as the DHO. The DHO's 4-page report is attached to the complaint. Ex. B. It reveals that the plaintiff's only witness was his chosen staff representative, Lief. Frost faults Lief herein for not appearing until the hearing, not helping him prepare for it, and testifying only as a character witness--rather than offering any real assistance. Although the report contains the information that the plaintiff admitted to the charges at the hearing, he flatly denies that he did so. Further, Frost claims, Tyndall showed that he was biased against him, another violation of the duties outlined in 28 C.F.R. §§541.16-.17.

The DHO found Frost guilty of possession of narcotics, the Code 113 charge against him, and of possession of anything not authorized, a lesser Code 305 offense, rather than the stealing, the Code 219 offense, with which he had been charged. As to reducing the stealing charge, the DHO found no credible evidence of theft with regard to the batteries, but found that the plaintiff was still not authorized to have so many batteries in his possession.[3]

For the drug conviction, the plaintiff was sanctioned with the loss of 40 days' GCT, 30 days in disciplinary segregation, and the loss of visits for 6 months. For possessing anything not

---

[3]

In the BOP National Office response to Plaintiff's appeal, the Administrator of National Inmate Appeals cites BOP Program Statement 5580.07, Inmate Personal Property, and the prison's individual supplement to it, as setting a limit of no more than 4 batteries in a prisoner's possession.

authorized, the punishment imposed was the loss of an additional 13 days' GCT and another 10 days in disciplinary segregation.

Plaintiff Frost appealed the convictions, and he attaches the documents exchanged in regional and national levels of that process. The BOP's final response denying relief is dated January 31, 2006. On January 26, 2007, the plaintiff filed the instant cause of action.

## DISCUSSION

The plaintiff has set up a swearing contest for the Court. He points to parts of the administrative record, and then, without any evidence contradicting what is in the record, he alleges that what is recorded there did not happen.[4] *See Garrett v. Smith,* 180 Appx. 379, 381 (3rd Cir. 2006) (not selected for publication in the Federal Reporter) (affirming district court's dismissal, the prisoner having failed to present any evidence contradicting what appeared in the record). Frost does not appear to understand the limited nature of the federal district court's review of a prison disciplinary proceeding.

Because Plaintiff Frost claims a due process violation, the Court begins with an examination of the due process required by the U.S. Constitution for prisoners facing disciplinary action, as it has been delineated by the Supreme Court of the United States in a few well known opinions. A prisoner is entitled to certain due process protections only when he or she is faced with the loss of good conduct time or a penalty which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995).

---

[4] Moreover, the plaintiff's allegations are sometimes contradictory. He admits that the disciplinary proceedings started properly, including his receiving a copy of the charges against him on June 22, 2005, but later claims, "At no time prior to the DHO Hearing did the Warden deliver a written notice of the charges to Plaintiff."

6

Since the penalties challenged herein included the loss of good conduct time, the instant plaintiff was entitled to certain procedures. Therefore, according to the Supreme Court, the following due process procedures must have been provided for him: (1) the right to appear before an impartial decision-making body; (2) a 24-hour written notice of the charge; (3) a qualified right to call witnesses; and (4) a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition, all as set out in *Wolff v. McDonnell,* 418 U.S. 539, 564-65 (1974).

The Supreme Court has separately ruled on the standard of evidentiary support sufficient to satisfy constitutional due process. Due process requires that a prisoner's good conduct time cannot be forfeited unless there is "some evidence" of his guilt. *Superintendent v. Hill*, 472 U.S. 445 (1985). In that case, the Supreme Court further wrote:

> Assuming that good time credits constitute a protected liberty interest, the revocation of such credits must be supported by some evidence in order to satisfy the minimum requirements of procedural due process . . . . [a]scertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of witnesses' credibility, or weighing of the evidence, but, instead, the relevant question is whether there is any evidence in the record to support the disciplinary board's conclusion.

*Id.* at 454-55.

This Court next sets out its analysis on whether the instant plaintiff's disciplinary proceedings complied with these constitutional standards. Taking *Wolff*'s requisites in order, the Court finds that although the plaintiff claims that the DHO was biased, he has offered no support for the claim, not even a potential theory. As to the notice requirement, Plaintiff has admitted to receiving a copy of the charges against him on the day of the incident. Therefore, he has clearly received notice of the charges well prior to the hearing determining his guilt or innocence, satisfying the due process

7

requirement of at least 24-hours notice of the charges.

With regard to the third due process requisite set out in *Wolff*, the plaintiff admits that he does not remember whether he asked for any witnesses. Further, the DHO report indicates that at the hearing he did not ask the DHO for any witnesses but, in fact, stated that he was ready to proceed. Plaintiff does not even allege that he was denied witnesses. Therefore, the Court cannot find that he was denied his qualified right to call witnesses, in violation of his due process rights.

The final *Wolff* requirement is certainly met, *i.e.*, "a written statement by the fact-finder(s) as to the evidence relied on and reasons for the disposition." The DHO report serves this function. As to the evidence, the DHO first indicates that he considered the "Incident Report and Investigation." The copy of the incident report which Plaintiff attaches to the complaint herein is difficult to read, but one readable part is what Frost purportedly said to the UDC, ". . . The batteries were in my locker but I did not steal them." The DHO writes that he also considered a June 22, 2005 memorandum written by M. Burt," the chief pharmacist, who stated therein that the seized Sudodrin tablets were not stocked or distributed at the prison.

Additionally, DHO Tyndall reports that he considered several more statements made by the plaintiff. One was a written statement, which Frost had presented at the hearing and which the DHO describes as containing the plaintiff's admission that he had the contraband items. The other was an oral statement which the plaintiff also presented at the hearing. It is described as follows:

> After being read the incident report by the DHO, the inmate stated the report was true. Inmate Frost stated, it is not what it seems, but yes it was in my locker. Inmate Frost admits to having the pills, but claim they are not narcotics. I gave them stamps and they gave me batteries.

Ex. B. On the last page of the report, the DHO set out the punishments which he was imposing and

8

completed the section entitled, "Reason for Sanction or Action Taken." His reasons include making sure the prisoner is held personally responsible, caring for institutional safety and security, deterring other inmates from such conduct, and hoping to modify Frost's behavior.

The Court concludes that the plaintiff received adequate procedural due process protections in the disciplinary proceedings complained of. Additionally, the Court also finds that there is sufficient evidence to support his conviction. It must be remembered that, under *Superintendent v. Hill*, judicial review of a prison disciplinary decision does not involve a redetermination of an inmate's innocence or guilt.

Upon the presentation of a prison disciplinary decision, the role of the federal court is merely to ensure that the prisoner was afforded certain procedures, the action against him is not arbitrary, and the ultimate decision has some evidentiary support. *Superintendent*, 472 U.S. at 457. Additionally, the credibility determinations of hearing officers cannot be disturbed. *See Wagner v. Seely*, 915 F.2d 1575, 1576 (7th Cir. 1990)(unpublished), *cert. denied*, 501 U.S. 1219 (1991).

In the case *sub judice*, there is more than "some evidence" of Plaintiff Frost's guilt. "Some evidence" is a lenient standard; the relevant question is whether any evidence in the record could support the disciplinary board's conclusion. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. at 455-56; *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir.2000). Even meager proof will suffice. *Webb*, 224 F.3d at 652. This Court finds no constitutional error in the plaintiff's disciplinary proceedings. Therefore, all of Plaintiff's due process claims lack merit and will be dismissed.

The plaintiff has also contended that he has rights under BOP policies and regulations and these rights also were violated. He does not specify which BOP policy is purportedly not followed,

9

but the Court takes judicial notice that the vehicle for any BOP policy is what is called a Program Statement. The one relevant herein is Program Statement (P.S.) 5270.07, *Inmate Discipline and Special Housing Units*. The BOP's position on the plaintiff's appeal of his conviction was that Frost's proceedings were consistent with this program statement.

Even had this program statement been violated, however, the federal courts have routinely held that "[t]he BOP's program statements are internal agency interpretations of its statutory regulations." *Parsons v. Pitzer*, 149 F.3d 734, 738 (7th Cir. 1998); *see also Koray v. Sizer*, 21 F.3d 558, 562 (3d Cir. 1994), *rev'd on other grounds sub nom.*, *Reno v. Koray*, 515 U.S. 50 (1995) ("The Bureau's interpretation is recorded in its 'Program Statements,' which are merely internal agency guidelines and may be altered by the Bureau at will."). They do not create a federal cause of action for a prisoner but instead serve as internal guidelines. *See Miller v. Henman*, 804 F.2d 421, 426 (7th Cir. 1986).

With regard to BOP regulations governing disciplinary proceedings, they are, indeed, set out in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken when a prisoner violates, or attempts to violate, institutional rules. As the plaintiff has alleged, the first step requires filing an incident report and conducting an investigation. 28 C.F.R. §541.14. Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. §541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a DHO for a hearing. *Id.* Because the instant plaintiff was charged with an offense in the greatest

10

severity category, the matter was referred for a DHO hearing, per the regulation.

The Court finds no violation of these regulations in the instant record. The plaintiff's own exhibits show that, *inter alia*, on June 22, 2005, he received a copy of the charges from a lieutenant, Defendant Craddock; upon investigation, it was learned that the prison pharmacy did not stock those tablets; the plaintiff admitted possession of the drugs and batteries to the UDC and tried to explain the reasons, so they must have given him an opportunity to speak; the UDC meeting occurred on the fifth day, not the third day, but the regulation's reference to time is only that it be held within three days "ordinarily"; and the prisoner is not entitled to a copy of the investigation.

Again, even if the plaintiff were correct that his proceedings violated these BOP regulations, procedural shortcomings in following both policy and regulations "are not of constitutional import. . . . [A] prisoner must show that his continued custody is a violation of the Constitution, and the violation of an administrative rule is not the same thing as a violation of the constitution." *Williams v. Scibana*, 2004 WL 1774739 (W.D. Wis. 2004) (not reported) (quoting *White v. Henman*, 977 F.2d 202, 295 (7th Cir. 1992)).

Finally, because the plaintiff has presented his claims as sounding in a violation of federal law and in negligence, the Court examines the plaintiff's purported negligence claim. "It is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest." *Lewellen v. Metropolitan Govt. of Nashville*, 34 F.3d 345, 348 (6th Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); *DeShaney v. Winnebago County Dep't of Social Services*, 489 U.S. 189, 201-02 (1989); *and Daniels v. Williams*, 474 U.S. 327, 332 (1986)), *cert. denied*, 115 S. Ct. 903 (1995). Nor has the plaintiff otherwise stated

11

a negligence claim. *See Jones v. Sherill*, 827 F.2d 1102, 1105-06 (6th Cir. 1987) (simple allegation of gross negligence is insufficient: the plaintiff must allege specific facts to support).

A further bar to any negligence claim going forward is the plaintiff's failure to proceed under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§2671-2680. It is the only vehicle for a negligence claim against any federal employee, and under it a plaintiff must exhaust the FTCA's administrative remedies, different from the BOP's, prior to adjudicating a claim in federal court. *Tinker-Bey v. Meyers*, 800 F.2d 710 (7th Cir. 1986). Before the plaintiff can maintain any action under the FTCA, he must have first filed a timely claim with the regional office of the Bureau of Prisons in the region where the tort happened and received a denial of his claim. *See* 28 U.S.C. §2675(a); 28 C.F.R. §543.30 *et seq*.

This Court concludes that the instant plaintiff has failed to state any claim upon which the Court may grant relief, and his complaint will be dismissed.

## CONCLUSION

Accordingly, **IT IS ORDERED** that Plaintiff Robert Wayne Frost's current cause of action will be **DISMISSED**, *sua sponte,* from the docket of the Court, and Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of the Defendants.

This the 15th day of February, 2007.

JOSEPH M. HOOD, CHIEF JUDGE

12